**BEFORE THE**
**UNITED STATES JUDICIAL PANEL ON**
**MULTIDISTRICT LITIGATION**

IN RE: DOMESTIC AIRLINE TRAVEL      )      MDL No.
ANTITRUST LITIGATION                      )
                                                      )
_____ )

**PLAINTIFFS BIDGOLI, HUNTER, AND MIGDAL'S MEMORANDUM**
**IN SUPPORT OF THEIR MOTION FOR TRANSFER OF RELATED ACTIONS TO**
**THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION, PURSUANT TO**
**28 U.S.C. § 1407 FOR CONSOLIDATED PRETRIAL PROCEEDINGS**

Pursuant to 28 U.S.C. § 1407 and Rule 6.2(a) of the Rules of Procedure for the Judicial

Panel on Multidistrict Litigation, Plaintiffs Anooshirvan Bidgoli, Barbara Hunter, and Annie

Migdal respectfully move the Judicial Panel on Multidistrict Litigation for an Order for transfer

of all Related Actions to the United States District Court for the Northern District of Illinois,

Eastern Division, for coordinated or consolidated pretrial proceedings.      Movants also

respectfully request that any subsequently filed "tag-along" actions brought in other courts be

similarly transferred and consolidated under Rule 6.2 of the Rules of Procedure of the Judicial

Panel on Multidistrict Litigation.

**BACKGROUND**

On July 2, 2015, Movants filed one of the first domestic air travel class actions in the

country in the United States District Court for the Northern District of Illinois, Eastern Division.[2]

Movants allege that Defendants engaged in a conspiracy to fix prices in the market for domestic

_____

[2] A Related Action, *Lavin v. American Airlines Inc. et al.*, No. 15-cv-5231, was filed in
the United States District Court for the Northern District of California on the same day. Another,
*Devivo v. Delta Airlines, Inc. et al.*, No. 15-cv-5162, was filed in the United States District Court
for the Southern District of New York the day before, and *Hersh v. Delta Airlines, Inc. et al.*, No.
15-cv-5162, was filed in the United States District Court for the Eastern District of New York
the day after. On July 6, 2015 another action was filed in the Southern District of New York,
captioned *Winton v. Delta Air Lines, Inc. et al*, No. 15-cv-05231.

airline travel in the United States in violation of Section 1 of the Sherman Act. In addition to the action pending in the Northern District of Illinois, actions are also pending in the Northern District of California, Eastern District of New York, and Southern District of New York. *See* Schedule of Actions.

The Related Actions involve common questions of fact and law. Each action alleges that American Airlines, Inc.; Delta Air Lines, Inc.; Southwest Airlines Co.; and United Airlines, Inc. (collectively, "Defendants") have conspired to fix prices for and restricted the capacity of domestic airline travel throughout the United States, allocated markets and territories, and committed other anticompetitive practices designed to unlawfully fix, raise, maintain and stabilize the prices and rates at which domestic airline travel was sold in the United States. Furthermore, each of the Related Actions is based on similar facts, asserts antitrust claims under the Sherman Act, 15 U.S.C. § 1, and seeks similar relief.

The Related Actions necessarily share core common questions of fact, and invariably will generate duplicative and overlapping discovery requests and disputes. Thus, the Related Actions should be consolidated or coordinated in a single District to prevent duplicative discovery and motion practice, avoid the possibility of inconsistent rulings, and conserve the resources of the courts and the litigants.

Movants submit that the Northern District of Illinois, Eastern Division, is the most appropriate forum for coordination or consolidation of all the Related Actions, and that the Related Actions not pending in that District ought to be transferred there for the following reasons:

- This action was one of the first filed actions;
- Three of the defendants, Southwest Airlines, United Airlines, and American Airlines, all have major hubs based at Chicago airports;

- United Airlines is headquartered in Chicago's Willis Tower in the Northern District of Illinois, a mere four city blocks from the Dirksen Federal Building courthouse;

- No other airline is headquartered in any district in which a case has been filed in these matters to date;

- The Northern District of Illinois is centrally located and easily accessible from anywhere in the United States of America; and

- The Northern District of Illinois has the resources and judicial expertise to handle the Related Actions.

## ARGUMENT

**I.     Consolidation and Transfer of the Related Actions is Appropriate and Necessary.**

The Panel is authorized to consolidate and transfer civil cases pending in different judicial districts (1) when the cases involve common questions of fact, (2) when consolidation and transfer will be for the convenience of the parties and witnesses, and (3) when consolidation and transfer will promote the just and efficient conduct of the litigation.  28 U.S.C. § 1407(a).

> **A.     *Consolidation or Coordination Is Appropriate Because the Related Actions Involve One or More Common Questions of Fact and Law.***

Here, each of the Related Actions alleges that Defendants conspired to fix, raise, maintain and/or stabilize prices for domestic airline travel over the same time period in violation of the Sherman Act.  The Panel consistently holds that cases involving overlapping factual and legal issues are particularly appropriate for transfer. *See, e.g., In re: Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. MDL 1720, 2013 WL 8123000, at *1 (J.P.M.L. 2013) (transferring related antitrust cases under § 1407 because, among other things, the cases "involved common questions of fact"); *In re: Auto. Wire Harness Sys. Antitrust Litig.*, 867 F. Supp. 2d 1349, 1350 (J.P.M.L. 2012) (centralizing related price-fixing actions that involved common questions of fact).  Further, because Section 1407 does not require a majority of common factual issues as a condition for transfer, the many common questions thus presented

3

are more than sufficient to satisfy Section 1407. *See In re: Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 24 F. Supp. 3d 1361, 1362 (J.P.M.L. 2014).

In this case, common questions of fact and law include: (a) whether Defendants combined or conspired to fix, raise, maintain, or stabilize the price of domestic airfare in the United States; (b) whether Defendants combined or conspired to restrict the supply of seats sold on domestic flights in the United States; (c) whether Defendants shared non-public information, allocated markets and customers, restricted the supply of seats sold on domestic flights in the United States, and committed other conduct in furtherance of the alleged conspiracy; (d) whether Defendants' conduct caused the prices of domestic airfare in the United States to be at artificially high and noncompetitive levels; (e) whether Plaintiffs and the other members of the Class were injured by Defendants' conduct, and, if so, the appropriate classwide measure of damages for Class Members; and (f) whether Plaintiffs and the other members of the Class are entitled to, among other things, injunctive relief, and, if so, the nature and extent of such injunctive relief.

## B.    *Consolidation or Coordination for Pretrial Proceedings Will Further the Convenience of Parties and Witnesses.*

Consolidation or coordination of the Related Actions will serve the convenience of the parties and witnesses. Discovery in all of these actions will involve the same testimony and documentary evidence. Defendants will likely assert similar discovery objections and privileges in each of the pending actions. Consolidation of these actions will avoid duplicative, redundant, and costly discovery proceedings, and avoid repetitive motion practice and potentially conflicting discovery and other pretrial rulings. *See, e.g., In re Pharmacy Ben. Managers, 452 F. Supp. 2d 1352, 1353 (J.P.M.L. 2006)* (transferring cases to a single district to avoid duplicative discovery); *In re Amino Acid Lysine Antitrust Litig.*, 910 F. Supp. 696, 698 (J.P.M.L. 1995) (same); *In re Multi-Piece Rim Prod. Liab. Litig.*, 464 F. Supp. 969, 974 (J.P.M.L. 1979) (same).

**C.     Consolidation or Coordination for Pretrial Proceedings Will Promote the Just and Efficient Conduct of the Related Actions.**

Consolidation or coordination of the Related Actions will promote the just and efficient conduct of the actions.  Each Related Action will involve the same pretrial issues.  Consolidation or coordination will eliminate the likelihood of duplicative proceedings that might result in inconsistent rulings and will prevent judicial resources from being wasted needlessly.  *See In re Auto Body Shop Antitrust Litig.*, 37 F. Supp. 3d 1388, 1391 (J.P.M.L. 2014) ("Centralization under Section 1407 will eliminate duplicative discovery; prevent inconsistent rulings on pretrial matters; and conserve the resources of the parties, their counsel and the judiciary."); *In re: N. Sea Brent Crude Oil Futures Litig.*, 978 F. Supp. 2d 1384, 1385 (J.P.M.L. 2013) ("Centralization will avoid duplicative discovery and eliminate the possibility of inconsistent rulings on Daubert motions and other pretrial matters."); *In re Commercial Money Ctr., Inc. Equip. Lease Litig.*, No. MDL 1490, 2002 WL 31432881, at *1 (J.P.M.L. Oct. 25, 2002) (stating that consolidation of cases filed nationwide would prevent inconsistent rulings).  Further, centralization in class action cases is especially important because it ensures that there is a consistent treatment of class action issues.  *See In re Cement & Concrete Antitrust Litig.*, 465 F. Supp. 1299, 1301 (J.P.M.L. 1979) ("Transfer is especially important to ensure consistent treatment of the class action issues."); *In re Hawaiian Hotel Room Rate Antitrust Litig.*, 438 F. Supp. 935, 936 (J.P.M.L. 1977).

**D.     There is Sufficient Numerosity to Support Transfer and Consolidation.**

There are currently five cases pending before judges in four separate jurisdictions. Other cases will likely be filed as well.  The Panel has routinely ordered consolidation and transfer of five or fewer cases.  *See, e.g., In re: Schnuck Markets, Inc., Customer Data Sec. Breach Litig.*, 978 F. Supp. 2d 1379 (J.P.M.L. 2013) (transferring and consolidating four cases); *In re Philadelphia Life Ins. Co. Sales Practices Litig.*, 149 F. Supp. 2d 937, 938 (J.P.M.L. 2001) (granting transfer and consolidation of two cases); *In re Amoxicillin Patent & Antitrust Litig.*,

449 F. Supp. 601, 603 (J.P.M.L. 1978) (granting transfer and consolidation of three cases involving complex patent and antitrust issues). Moreover, where, as here, the actions share numerous complex questions of fact, the Panel has consolidated a relatively small number of actions. For example, in *In re First National Bank, Heavener, Oklahoma (First Mortgage Revenue Bonds) Securities Litigation*, the Panel consolidated two actions that arose from the same factual allegations and shared numerous "complex questions of fact." 451 F. Supp. 995, 997 (J.P.M.L. 1978). Accordingly, a sufficient number of actions exist to support the transfer and consolidation of the Related Actions.

## II.     The Northern District of Illinois, Eastern Division is the Most Appropriate Forum for Transfer of the Related Actions.

An analysis of the applicable facts and relevant case law reveals that the Northern District of Illinois, Eastern Division, is the best choice for transfer and consolidation and/or coordination of pretrial proceedings. As Defendants have not filed a responsive pleading in any Related Action, all Related Actions are in their infancy. To determine the appropriate forum for transfer, the Panel can consider: whether the proposed district is where the first case was filed, *In re Baldwin-United Corp. Litig.*, 581 F. Supp. 739, 741 (J.P.M.L. 1984); the location of parties, witnesses and documents, *In re American Continental Corp./Lincoln Savings and Loan Securities Litigation*, 130 F.R.D. 475, 476 (J.P.M.L. 1990); the convenience of the district to the parties and witnesses, *In re Polychloroprene Rubber*, 360 F. Supp. 2d 1348, 1350 (J.P.M.L. 2005); and the transferee court's experience and ability to handle complex multidistrict litigation, *In re Celexa and Lexapro Products Liability Litigation*, 416 F. Supp. 2d 1361, 1363 (J.P.M.L. 2006). These factors individually and collectively support transfer to the Northern District of Illinois, Eastern Division.

### A.      The Northern District of Illinois Is Where One of the First Cases Was Filed.

The Northern District of Illinois is where one of the first cases was filed.  The Panel has frequently opted to consolidate cases before the court that manages the litigation's first-filed complaint and most actively advances the matters before it.  *See, e.g., In re Dual-Deck Video Cassette Recorder Antitrust Litig.,* No. 765 1988 U.S. Dist. LEXIS 17039, at *2 (J.P.M.L. Aug. 12, 1988) (stating that transfer to Arizona was appropriate in part because "the first-filed action [was] pending there").  Judge Wood has already set an initial status hearing in the *Bidgoli* matter, and is the only judge to have advanced beyond issuing summons.  *See, e.g., In re: Monitronics Int'l, Inc., Tel. Consumer Prot. Act Litig.,* 988 F. Supp. 2d 1364, 1367 (J.P.M.L. 2013) (favoring transfer to the court presiding over the most advanced action).

### B.      Parties, Witnesses and Documents are Likely Located in the Northern District of Illinois.

In deciding whether a particular forum is convenient, the Panel has considered the location of the parties and potential witnesses relative to that district.  *See, e.g., In re: Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.,* 949 F. Supp. 2d 1365, 1366 (J.P.M.L. 2013) (transferring based on the ease and accessibility for the parties and third-party witnesses); *In re Webloyalty.com, Inc., Marketing & Sales Practices Litig.,* 474 F. Supp. 2d 1353, 1354 (J.P.M.L. 2007) ("The Panel is persuaded that the District of Massachusetts is an appropriate transferee district for this litigation. Webloyalty is headquartered nearby and it is likely to be the source of a substantial number of witnesses and documents subject to discovery."); *In re Kugel Mesh Hernia Patch Prods. Liab. Litig.,* 493 F. Supp. 2d 1371, 1373 (J.P.M.L. 2007) (concluding that litigation should be centralized in a district where the defendant's headquarters were located because witnesses and relevant documents would likely be found within the district); *In re Isolagen, Inc., Secs. & Derivative Litig.,* 416 F. Supp. 2d 1366, 1367 (J.P.M.L. 2006) (same).

7

Here, three of the defendants, Southwest Airlines, United Airlines, and American Airlines, all operate major air traffic hubs at Chicago airports. Moreover, United Airlines operates its headquarters and principal place of business in Chicago, within the Northern District of Illinois. Thus, many witnesses and documents likely will be found in or near the Northern District of Illinois, and major discovery issues will likely arise in this jurisdiction. By comparison, no other defendant has its headquarters or principal place of business in any district in which an action has been filed to date. Accordingly, the core geographic nexus to the litigation, located in the center of the United States, strongly favors transfer to the Northern District of Illinois. *See, e.g., In re Ditropan XL Antitrust Litig.*, 429 F. Supp. 2d 1364, 1366 (J.P.M.L. 2006) (transferring to district because, in part, "many of the relevant witnesses and documents are likely located in this district, where [defendant] is based"); *In re Live Concert Antitrust Litig.*, 429 F. Supp. 2d 1363, 1364 (J.P.M.L. 2006) (transferring to district in part because it was "likely that a substantial number of witnesses and documents" were located there because the defendant whose conduct was at issue was located there); *In re Hydrogen Peroxide Antitrust Litig.*, 374 F. Supp. 2d 1345, 1346 (J.P.M.L. 2005) (transferring to district because, in part, it had "a nexus to the litigation" given the presence of two of the defendants in the jurisdiction).

/ / /

/ / /

## C.    The Convenience of the Parties and Witnesses Favors Transfer to the Northern District of Illinois.

The Northern District of Illinois's central location allows easy access for all parties and witnesses. *See In re: Monitronics Int'l, Inc., Tel. Consumer Prot. Act Litig.*, 988 F. Supp. 2d 1364, 1366 (J.P.M.L. 2013) (transferring and consolidating to the district that "will serve the convenience of the parties and witnesses and promote the just and efficient conduct of this

litigation"); *In re: Lipitor Antitrust Litig.*, 2012 WL 4069565, at \*1 (J.P.M.L. 2012) (same); *In re: Pradaxa (dabigatran etexilate) Products Liab. Litig.*, 883 F. Supp. 2d 1355 (J.P.M.L 2012) (transfer to Southern District of Illinois appropriate because of its central geographic location). Further, the Panel routinely assesses the ease of access to the transferee forum in selecting the transferee forum. *In re: Niaspan Antitrust Litig.*, 971 F. Supp. 2d 1346 (J.P.M.L. 2013); *In re Transit Co. Tire Antitrust Litig.*, 350 F. Supp. 1165, 1166 (J.P.M.L. 1972) (transfer to Missouri appropriate given centralized location). Here, not only is a defendant headquartered in the Northern District of Illinois, this District is also accessible, convenient and geographically central to all parties and witnesses.

For the parties and witnesses not within driving distance of Chicago, Chicago's O'Hare International and Midway International airports are two of America's best-connected airports. Over 66 million people a year travel through Chicago O'Hare International Airport, which was voted "Best Airport in North America" in 2000 by international travelers surveyed in *Business Traveler* magazine. Similarly, Midway International sees over 18 million people each year pass through its gates. Both provide convenient access from all points of the nation due to their geographically central location. Notably, direct flights are currently available from almost all major cities in the United States. Thus, the Northern District of Illinois sitting in Chicago would be a convenient transferee site for those parties and witnesses that are not already located within driving distance of the District.

Accordingly, the Northern District of Illinois is a centrally located district that is easily accessible to all parties and witnesses. The presence of parties, witnesses and documents in the Northern District of Illinois creates a strong nexus between that District and this litigation, and supports transfer to that District.

**D.**    ***The Northern District of Illinois Has the Experience and Ability to Handle These Cases.***

Transfer to the Northern District of Illinois and Judge Wood places this litigation before an experienced jurist in a district with a superior docket and efficient case management. Moreover, Judge Wood is not currently assigned to any pending MDL matters.[3]  In making a determination of transfer, the Panel has also considered: the docket congestion of the potential forums in deciding where related actions should be transferred, *In re Air Crash Disaster at Taipei Int'l Airport,* 433 F. Supp. 1120, 1122 (J.P.M.L. 1977); statistics on median time in civil actions between filing and disposition are relevant, *In re Preferential Drug Products Pricing Antitrust Litigation,* 429 F. Supp. 1027, 1029 (J.P.M.L. 1977); and the multidistrict litigation caseload of the potential transferee forums, *In re AT&T Corp. Sees. Litig.,* No. 1399, 2001 WL 34834425, at *1 (J.P.M.L. Apr. 19, 2001).  Here, the overall caseload statistics favor transfer to the Northern District of Illinois.  In March 2015, the median time from filing to disposition in the Northern District was 7.4 months and from filing to trial was 30.7 months.  Only 9.5 percent of pending cases in the Northern District are over three years old.  These statistics compare favorably to those in the other districts where Related Actions have been filed.  U.S. District Court–Judicial Caseload Profile, available at http://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2015/03/31-2.

The Northern District of Illinois has the resources, time, and experience to manage this litigation.  The Panel has recognized on numerous occasions that the District has available the resources to handle a complex antitrust docket. *See, e.g., In re Sulfuric Acid Antitrust Litig.,* 270 F. Supp. 2d 1379, 1380 (J.P.M.L. 2003) (noting that the Northern District of Illinois is an

---

[3]*See* Distribution of Pending MDL Dockets (July 6, 2015), available at http://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-April-15-2015.pdf.

appropriate forum for the litigation because of its geographically central location and resources). Thus, Judge Wood and the Northern District of Illinois, Eastern Division, are well suited to manage this litigation.

## CONCLUSION

These cases and all related actions should be transferred to and consolidated before Judge Wood of the Northern District of Illinois, Eastern Division, for coordinated pretrial proceedings. This experienced court is able to handle the matter most expeditiously and efficiently. One defendant is headquartered in the Northern District of Illinois, Eastern Division, and three of the defendants have major air traffic hubs within the district. The Northern District of Illinois, Eastern Division, is easily accessible and serves the convenience of the parties. Transfer to the Northern District of Illinois, Eastern Division, would serve the interests of justice and economy and would allow the litigation to proceed expeditiously.

Accordingly, Plaintiffs Bidgoli, Hunter, and Migdal respectfully request that this Panel consolidate and transfer all related actions to the Northern District of Illinois, Eastern Division.

DATED:  July 6, 2015                BY: */s/ Steven A. Hart*
                                        Steven A. Hart

                                        Steven A. Hart (#6211008)
                                        Robert J. McLaughlin (#6272701)
                                        Brian H. Eldridge (#6281336)
                                        **SEGAL McCAMBRIDGE SINGER
                                        & MAHONEY, LTD.**
                                        233 South Wacker Drive
                                        Willis Tower-Suite 5500
                                        Chicago, Illinois 60606
                                        Telephone: (312) 645-7800
                                        Facsimile:  (312) 645-7711
                                        shart@smsm.com

                                        Bruce L. Simon
                                        Aaron M. Sheanin
                                        Benjamin E. Shiftan
                                        **PEARSON, SIMON & WARSHAW, LLP**
                                        44 Montgomery Street, Suite 2450
                                        San Francisco, California 94104
                                        Telephone: (415) 433 9000
                                        Facsimile:  (415) 433 9008
                                        bsimon@pswlaw.com

                                        Clifford H. Pearson
                                        Daniel L. Warshaw
                                        Bobby Pouya
                                        Alexander R. Safyan
                                        **PEARSON, SIMON & WARSHAW, LLP**
                                        15165 Ventura Boulevard, Suite 400
                                        Sherman Oaks, California 91403
                                        Telephone: (818) 788-8300
                                        Facsimile:  (818) 788-8104
                                        asafyan@pswlaw.com

                                        W. Joseph Bruckner
                                        Heidi M. Silton
                                        **LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
                                        100 Washington Avenue South, Suite 2200
                                        Minneapolis, Minnesota 55401
                                        Telephone: (612) 339-6900
                                        Facsimile:  (612) 339-0981
                                        wjbruckner@locklaw.com

                                        Kevin Bruce Love
                                        **CRIDEN & LOVE, P.A.**
                                        7301 SW 57th Court, Suite 515
                                        South Miami, Florida  33143
                                        Telephone: (305) 357-9010
                                        Facsimile:  (305) 357-9050

                                        *Attorneys for Plaintiffs Anooshirvan Bidgoli, Barbara
                                        Hunter, and Annie Migdal and the Putative Class*