BEFORE THE
UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

| | | |
|---|---|---|
| IN RE: DOMESTIC AIRLINE TRAVEL ANTITRUST LITIGATION | ) ) ) ) | MDL NO. 2656 |

**PLAINTIFFS CUMMING, NELSON, SHANKLE, AND TOMLIN'S RESPONSE IN OPPOSITION TO THE MOTIONS FOR TRANSFER OF RELATED ACTIONS TO THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION OR THE EASTERN DISTRICT OF NEW YORK**

Pursuant to 28 U.S.C. § 1407 and Rule 6.2(a) of the Rules of Procedure for the Judicial Panel on Multidistrict Litigation, Plaintiffs Elizabeth C. Cumming, Kenneth A. Nelson, Jonathan Shankle, Bradford Tomlin, and Whitney Tomlin (collectively, the "Dallas Plaintiffs") respectfully respond in opposition to the Motions for Transfer of Related Actions to the Northern District of Illinois, Eastern Division (MDL Docs. 1 & 6). The Dallas Plaintiffs instead urge the Panel to transfer all related cases to the United States District Court for the Northern District of Texas, Dallas Division.

The Northern District of Texas (Dallas Division) is the most appropriate transferee forum because (1) two of the principal defendants (American Airlines, Inc. and Southwest Airlines, Inc.) are headquartered in the District; (2) Dallas will be a center of discovery in the consolidated or coordinated cases; (3) Dallas is the most convenient location for all parties and counsel; (4) the Northern District of Texas (Dallas Division) has the resources to efficiently manage this case; and (5) Judge A. Joe Fish, the judge to whom the Dallas Plaintiffs' case has been assigned, is a senior judge with decades of experience handling complex cases.

1

## I. BACKGROUND

As of the date of this response, at least ten class action lawsuits have been filed on behalf of direct purchasers of domestic airline tickets against American Airlines, Inc. ("American"), Southwest Airlines Co. ("Southwest"), Delta Airlines, Inc. ("Delta"), and United Airlines, Inc. ("United") (collectively, "Defendants").  The cases are pending in the following five districts:  Southern District of New York; Eastern District of New York; Northern District of Illinois; Northern District of California; and the District for the District of Columbia (collectively, the "Related Actions").

The Related Actions share common issues of fact and law.  All allege that Defendants have entered into a conspiracy to raise or maintain ticket prices for domestic air transportation, principally by restricting capacity growth.  Each of the Related Actions asserts antitrust claims under section 1 of the Sherman Act, 15 U.S.C. § 1, and seeks similar relief.

American is a Delaware corporation. American maintains its headquarters in Fort Worth, Texas, and operates its principal hub at the Dallas/Fort Worth Airport—both within the boundaries of the Northern District of Texas.

Southwest is a Texas corporation.  Southwest maintains its headquarters in Dallas, Texas, and operates its principal hub at historic Love Field in Dallas.

The remaining defendants are located outside of Dallas.  Delta is a Delaware corporation with is headquarters in Atlanta, Georgia.  And United is a Delaware corporation with its headquarters in Chicago, Illinois.  Both Delta and American have significant operating presences at the Dallas/Fort Worth Airport and Love Field.

## II.  ARGUMENT

A. **Transfer Under 28 U.S.C. § 1407 Is Appropriate Here.**

The Dallas Plaintiffs agree that transfer of the Related Actions and consolidation or coordination for pretrial proceedings under 28 U.S.C. § 1407 is appropriate. Section 1407(a) permits transfer and consolidation or coordination of cases where: (1) the civil actions involve "one or more common questions of fact"; (2) transfer will serve "the convenience of parties and witnesses"; and (3) transfer "will promote the just and efficient conduct" of the civil actions. *See also In re Long-Distance Telephone Serv. Fed. Excise Tax Refund Litig.*, 469 F. Supp. 2d 1348, 1350 (J.P.M.L. 2006) (describing requirements). There can be little dispute that each of the requirements is met in the matter before the Panel.

  1. **Common Questions of Fact.**

Each of the related actions involves a nucleus of similar factual allegations that will underpin discovery and focus the pretrial proceedings. At a minimum, common questions of fact include:

- ➢ The market for domestic airline travel;
- ➢ The existence, nature, and extent of the alleged conspiracy;
- ➢ The duration of the alleged conspiracy;
- ➢ The impact of the Defendants' anticompetitive conduct; and
- ➢ The injury suffered by Plaintiffs.

The first section 1407 requirement is easily met in this matter.

  2. **Convenience of Parties and Witnesses.**

Transfer and consolidation or coordination of the Related Actions will markedly serve the convenience of the parties and witnesses in this matter. There are currently at least

ten Related Actions pending, and there is certainly a prospect of future tag-along actions. Absent transfer and consolidation or coordination, the parties to the Related Actions may be subject to duplicative discovery requests and inconsistent court orders pertaining to the pretrial proceedings. Likewise, individual witnesses may be subject to multiple depositions, interviews, and other pretrial proceedings. Transfer and consolidation or coordination will obviate these concerns by limiting duplicative discovery and facilitating consistency before a single transferee court.

### 3. Just and Efficient Conduct of the Civil Actions.

Absent transfer and consolidation or coordination, there is a significant risk that litigation of the Related Actions will be anything but just and efficient. In litigating ten different cases involving the same factual and legal allegations, the parties face the prospect of district courts entering inconsistent rulings affecting discovery, class certification, and the ultimate disposition of the disputes. Severe inefficiencies would likewise occur as the parties engage in duplicative discovery and motion practice. Under these circumstances, transfer and consolidation or coordination is not only preferable; it is essential to the just and efficient litigation of the parties' disputes.

### B. The Related Actions Should Be Transferred to the Northern District of Texas (Dallas Division).

The United States District Court for the Northern District of Texas (Dallas Division) is the most appropriate district for transfer and consolidation or coordination of the Related Actions and any tag-along cases based on factors the Panel typically considers in settling on a transferee court:  (1) two of the principal defendants are located in Dallas; (2) Dallas will be a center of discovery in the consolidated or coordinated cases; (3) Dallas is the most convenient location for all parties and counsel; (4) the Northern District of Texas (Dallas Division) has the resources to efficiently manage this case; (5) Judge A. Joe Fish the

4

judge to whom the Dallas Plaintiffs' case has been assigned, has significant experience in managing a case of this size and complexity; and (6) there has been no significant progress in any Related Action.

### 1.      Dallas Is Home to Two of the Four Defendants.

In determining venue, the Panel often considers whether any defendant is located in the proposed transferee district. *See In re Nissan North America, Inc., Odometer Litigation (NO. II)*, 542 F. Supp. 2d 1367, 1369 (J.P.M.L. 2008) ("*Odometer Litigation*"); *In re "Factor VIII or IX Concentrate Blood Products", Prod. Liab. Litig.*, 853 F. Supp. 454, 455 (J.P.M.L. 1993) ("*Concentrate Blood Products*"). In this case, transfer to the Northern District of Texas makes sense because two of the principal defendants are based in the district: American and Southwest.

Put simply, the Northern District of Texas occupies a unique position in this litigation. No other proposed transferee district contains the headquarters of two of the four defendants in this case. American and Southwest are two of the largest airlines in the country, and both play a central role in the alleged conspiracy. Collectively, they employ thousands in the Dallas/Fort Worth Metroplex. To both companies, North Texas is a nerve center.

Of the currently pending cases, only the Northern District of Illinois is home to any of the remaining defendants. While United's role in the alleged conspiracy is undeniable, that fact alone does not dictate transfer to Chicago. This is especially true where two major parties—American and Southwest—call one district home. The Northern District of Texas is the logical transferee forum.

### 2.     Dallas Will Be the Site of Significant Discovery.

The Panel also considers whether significant discovery is likely to occur in the transferee district. *Odometer Litigation*, 542 F. Supp. 2d at 1369; *Concentrate Blood Products*, 853 F. Supp. at 455. Again, this factor favors transfer to the Northern District of Texas.

It goes without saying that plaintiffs in the Related Actions will seek production of relevant documents and the testimony of numerous witnesses from American and Southwest. These productions and depositions would most conveniently occur in Dallas, given the fact that both companies are headquartered there. No other district bears this distinction. The Northern District of Texas (Dallas Division) is the most logical center for the parties, documents, and witnesses relevant to this case, making the district the appropriate transferee forum. *See In re RadioShack Corp. "ERISA" Litigation*, 528 F. Supp. 2d 1348, 1349 (J.P.M.L. 2007) (transferring and consolidating cases in the Northern District of Texas, noting that the defendant was headquartered in the district and documents and witnesses would likely be found there); *In re UICI "Ass'n Group" Ins. Litigation*, 305 F. Supp. 2d 1360, 1362 (J.P.M.L. 2004) (transferring and consolidating actions in the Northern District of Texas because "the location of . . . defendant's headquarters within the Northern District of Texas implies that relevant witnesses and documents are likely to be found there").

### 3.     Dallas Is the Most Convenient Location for All Parties and Their Counsel.

The Panel should also consider whether the proposed transferee court is geographically convenient for the parties and counsel. *See In re: Sigg Switzerland (USA), Inc., Aluminum Bottles Marketing and Sales Practices Litigation*, 682 F. Supp. 2d 1347, 1349 (J.P.M.L.

6

2010) (considering geographic location of proposed transferee venue for nationwide class actions). In this case, the Northern District of Texas is the most convenient venue.

Currently, there are at least ten Related Actions literally stretching from the West Coast to the East Coast. Located in the center of the country and easily accessible, the Northern District of Texas is ideally situated for transfer of the Related Actions.

For parties, witnesses, and counsel not based in the Northern District of Texas, the district is easily accessible from all major cities across the United States and the world. For example, Dallas/Fort Worth International Airport is located approximately twenty miles from the Dallas Division's courthouse. At least 18 airlines serve the airport, including all major domestic and international carriers, with non-stop service to 186 destinations. There are numerous direct flights daily between Dallas and San Francisco, Chicago, New York, and Washington, DC. Two major hotels are integrated into the airport's terminal and several major hotels are located within walking distance of the Northern District of Texas courthouse. Similarly, Love Field is only 5 miles from the courthouse and downtown Dallas.

Finally, given its temperate climate (depending on how one measures summer temperatures), Dallas is by far the preferable transferee forum. Dallas airports rarely experience significant winter travel delays.

### 4. The Northern District of Texas Has Sufficient Resources to Manage the Case.

The Northern District of Texas (Dallas Division) has the capacity to efficiently manage the pretrial proceedings in the Related Actions. *In re: Lending Tree, LLC, Customer Data Security Breach Litigation*, 581 F. Supp. 2d 1367, 1368 (J.P.M.L. 2008) (considering the capacity of the proposed transferee district and the fact that it had been under-utilized as a transferee district); *In re Nifedipine Antitrust Litig.*, 266 F. Supp. 2d 1382, 1382-83 (J.P.M.L. 2003) (centralizing antitrust cases in a district whose docket is "well suited for the

expeditious handling of this litigation"). The following table compares relevant caseload statistics in the Northern District of Texas, Northern District of Illinois, Southern District of New York, Eastern District of New York, Northern District of California, and the District for the District of Columbia:

|            | Defendants HQ'd in District | Pending MDLs | Pending Cases per Judge | Median Mos. To Disp. (Civil) | Median Months to Trial | Pending Cases 3+ Years Old |
|------------|-----------------------------|--------------|-------------------------|------------------------------|------------------------|----------------------------|
| N.D. Tex.  | 2                           | 5            | 1,025                   | 6.9                          | 21.4                   | 8.9%                       |
| N.D. Ill.  | 1                           | 17           | 613                     | 7.0                          | 34.2                   | 9.3%                       |
| S.D.N.Y.   | -                           | 35           | 668                     | 9.0                          | 31.4                   | 22.9%                      |
| E.D.N.Y.   | -                           | 9            | 850                     | 8.8                          | 35.1                   | 12.3%                      |
| N.D. Cal.  | -                           | 17           | 446                     | 7.9                          | 25.6                   | 8.3%                       |
| D.D.C.     | -                           | 5            | 219                     | 7.6                          | 49.7                   | 15.7%                      |

Source: Ex. A, District Court Statistics.

Several statistics stand out in the table above, distinguishing the Northern District of Texas from other districts in which the Related Actions are pending. Perhaps the most significant measure of the efficiency of a transferee district is the time it takes to move its cases to disposition or trial. The Northern District of Texas stands out among all the districts in this regard. At 6.9 months to disposition and 21.4 months to trial, the Northern District of Texas leads the pack.

Another measure of the efficiency of a district in resolving complex commercial disputes is the number of pending cases that have been on file for over three years. As this Panel will note, the Northern District of Texas has the fewest such cases by percentage of any of the districts besides the Northern District of California. The Northern District of Texas is adept at moving its cases forward.

The Panel should also consider the number of pending MDL cases on the proposed transferee court's docket. At five pending MDL cases as of April 14, 2015, the Northern District of Texas has one of the lightest dockets in this regard among the identified districts, and indeed in the nation. *See* Ex. B, Distribution of Pending MDL Dockets. Moreover,

8

among the Related Action venues, it is by far the lightest along with the District for the District of Columbia.

As is apparent from the statistics cited above, the Northern District of Texas (Dallas Division) has the resources and capacity to manage the proposed transfer of the Related Actions for pretrial proceedings. Moreover, it is preferable to the Northern District of Illinois—the only other district in which a defendant is headquartered—given the number of MDLs pending in the Northern District of Illinois and the significant length of time it takes to bring a case to trial in that district.

The Northern District of Texas is also preferable to the Eastern District of New York by every measure of efficiency cited in the table above (time to disposition, time to trial, and cases over 3+ years). Proponents of the Eastern District of New York note that each of the Defendants conducts major operations in that district—but there is no credible suggestion that the Eastern District of New York serves as the nerve center of any of the Defendants, nor is there any compelling reason to believe that the district will be the sight of significant discovery. The number of flights in and out of the Eastern District of New York tells us little about when the Defendants' alleged conspiracy was hatched, who made the decisions, what was the scope of any agreement, and how was that agreement maintained. Those questions are likely to be answered by headquarters documents and personnel—both of which likely are found outside the Eastern District of New York.

**5.     Judge Fish Is Well Suited for this Case.**

Judge A. Joe Fish is currently presiding over the Dallas Plaintiffs' case in the Northern District of Texas. Judge fish is a senior judge with decades of experiences trying complex commercial cases. He is well suited to manage a case of this magnitude and complexity.

6. **Existence and Relative Progress of Other Pending Litigation.**

Other factors to be considered include the existence and progress of any related pending litigation, including whether any judge has become particularly familiar with the claims at issue. Here, the Related Actions were all filed within days of each other. Consequently, no action has significantly progressed, and no judge has gained any significant experience with any of the Related Actions.

### III.  CONCLUSION

The Northern District of Texas (Dallas Division) is the most appropriate district for transfer and consolidation of the Related Actions. The Dallas Plaintiffs respectfully request that the Panel transfer the Related Actions, and any future cases, to the United States District Court for the Northern District of Texas (Dallas Division) proceedings.

Dated: July 8, 2015

Respectfully submitted,

*/s/ Warren T. Burns*
Warren T. Burns
State Bar No. 24053119
BURNS CHAREST LLP
500 North Akard Street,
Suite 2810
Dallas, Texas 75201
Telephone: (469) 904-4550
Facsimile: (469) 444-5002
wburns@burnscharest.com