**BEFORE THE UNITED STATES JUDICIAL PANEL**
**ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE:  DOMESTIC AIRLINE TRAVEL ANTITRUST LITIGATION | :<br>:<br>:<br>:      MDL Docket No.:  2656<br>:<br>:<br>: |

**PLAINTIFF ELLIOT J. BLUMENTHAL'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION FOR TRANSFER TO THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA PURSUANT TO 28 U.S.C. § 1407**

Pursuant to 28 U.S.C. § 1407 and Rule 6.2(a) of the Rules of Procedure of the United States Judicial Panel on Multidistrict Litigation, plaintiff  Elliot J. Blumenthal ("Blumenthal") in *Blumenthal v. American Airlines, Inc., et. al.*, No. 1:15-cv-01056-CKK (D.D.C. 2015), respectfully submits this memorandum in support of his motion to transfer this MDL to the United States District Court for the District of Columbia.  Blumenthal respectfully submits that, in light of the commonality of the questions of law and fact at issue in these cases, the cases should be coordinated and consolidated for pre-trial purposes.

Blumenthal further respectfully submits that the United States District Court for the District of Columbia, where five actions have been filed to date, is the most appropriate and convenient forum for the pretrial prosecution of all actions given (a) the Honorable Colleen Kollar-Kottelly's substantial experience presiding over antitrust matters involving complex competitive issues, including those raised by the American Airlines-US Airways merger in 2013, as well as the ground-breaking antitrust issues presented by the Department of Justice's ("DOJ") earlier case involving Microsoft Corporation's monopolization of the personal computer operating system market; (b) all actions are closely intertwined with the DOJ's ongoing investigation in Washington, D.C. of collusion by the Defendant airlines; and (c) Washington,

D.C. is a convenient location for the parties and counsel in a case such as this, where the parties are geographically dispersed.

**INTRODUCTION**

This MDL involves allegations by several plaintiffs, and others similarly situated to them, that the nation's four major airlines—American, Delta, Southwest and United—engaged in a conspiracy to fix prices for domestic airline tickets by keeping domestic flight capacity artificially low.  As of the date of this filing, at least 23 substantially similar antitrust actions have been filed in seven judicial districts in the United States (the "Related Actions"): the District of Columbia, Northern District of California, Northern District of Illinois, Eastern District of New York, Southern District of New York, Eastern District of Pennsylvania and Northern District of Texas.[1]  Each of the Plaintiffs in the Related Actions seeks certification of a class of direct purchasers of airline tickets from one or more of the Defendant airlines.

---

[1] *Devivo v. Delta Airlines, Inc.*, No. 7:15-cv-05162 (S.D.N.Y., filed July 1, 2015); *Bidgoli v. Am. Airlines Grp., Inc.*, No. 1:15-cv-05903 (N.D. Ill., filed July 2, 2015); *Lavin v. Am. Airlines*, *Inc.*, No. 3:15-cv-03090 (N.D. Cal., filed July 2, 2015); *Hersh v. Delta Airlines, Inc.*, No. 1:15-cv-03908 (E.D.N.Y., filed July 3, 2015); *Andrade v. Am. Airlines Grp., Inc.*, No. 3:15-cv-03111 (N.D. Cal., filed July 6, 2015); *Blumenthal v. Am. Airlines, Inc.*, No. 1:15-cv-01056-CKK (D.D.C., filed Jul. 6, 2015); *Kromar v. Delta Airlines, Inc.*, No. 1:15-cv-03937 (E.D.N.Y, filed July 6, 2015); *Winton v. Southwest Airlines Co.*, No. 1:15-cv-05321 (S.D.N.Y., filed July 6, 2015); *State-Boston Retire. Sys. v. Am. Airlines, Inc.*, No. 1:15-cv-03974 (E.D.N.Y., filed July 7, 2015); *Backus v. Delta Airlines, Inc.*, No. 3:15-cv-03137 (N.D. Cal., filed July 7, 2015); *Youmans v. Am. Airlines, Inc.*, No. 1:15-cv-01059-CKK (D.D.C., filed July 7, 2015); *McEnerney v. Delta Airlines, Inc.*, No. 2:15-CV-03767 (E.D. Pa., filed July 8, 2015); *Cumming v. Am. Airlines, Inc.*, No. 3:15-CV-02253 (N.D. Tex., filed July 8, 2015); *Jain v. Am. Airlines, Inc.*, No. 1:15-cv-01072-CKK (D.D.C., filed July 8, 2015); *Howard Sloan Koller Grp. v. Am. Airlines, Inc.*, No. 1:15-cv-04002 (E.D.N.Y., filed July 8, 2015); *Hartley v. United Airlines, Inc.*, No. 3:15-cv-03176 (N.D. Cal., filed July 8, 2015); *Golian v. Am. Airlines, Inc.*, No. 1:15-cv-01075-CKK (D.D.C., filed July 9, 2015); *Repan v. Am. Airlines, Inc.*, No. 1:15-cv-04036 (E.D.N.Y., filed July 9, 2015); *Palmer v. Am. Airlines, Inc.*, No. 1:15-cv-04047 (E.D.N.Y., filed July 9, 2015); *Huey v. Am. Airlines, Inc.*, No. 1:15-cv-04048 (E.D.N.Y., filed July 9, 2015); *Curley v. Delta Airlines, Inc.*, No. 1:15-cv-4092 (E.D.N.Y., filed July 10, 2015); *Silver v. Am. Airlines Grp., Inc.*, No. 1:15-cv-6099 (N.D. Ill., filed July 10, 2015); *Panzino v. Am. Airlines, Inc.*, No. 1:15-cv-1084 (D.D.C., filed July 10, 2015).  A Schedule of the Related Actions is attached as

On July 6, 2015, Blumenthal filed a complaint against the airlines in the United States

District Court for the District of Columbia that was assigned to Judge Kollar-Kotelly.

*Blumenthal v. Am. Airlines, Inc.*, No. 1:15-cv-01056-CKK (D.D.C., filed Jul. 6, 2015).  Five

additional Plaintiffs filed four Related Actions in the District of Columbia on July 7, 8, 9 and 10,

2015, respectively, and, as of this filing, all but one of these cases also had been assigned to

Judge Kollar-Kotelly.  *Youmans v. Am. Airlines, Inc.*, No. 1:15-cv-01059-CKK (D.D.C., filed

July 7, 2015); *Jain v. Am. Airlines, Inc.*, No. 1:15-cv-01072-CKK (D.D.C., filed July 8, 2015);

*Golian v. Am. Airlines, Inc.*, No. 1:15-cv-01075-CKK (D.D.C., filed July 9, 2015); *Panzino v.*

*Am. Airlines, Inc.*, No. 1:15-cv-1084 (D.D.C., filed July 10, 2015).[2]  The Defendant airlines, each

of which is headquartered in a different city in three different states, not only conduct a

significant amount of business in the District of Columbia—each offering several flights into and

out of the Washington, D.C. area's three airports each day—it is where DOJ is running its

recently-launched investigation into the airlines' alleged collusive price-fixing.  As this Panel has

held on several occasions, the location of a government investigation often is a dispositive

consideration in the selection of a transferee forum, and it strongly weighs in favor of

Blumenthal's request for the transfer of all Related Actions to the District Court for the District

of Columbia.

Other factors the Panel typically considers in selecting a transferee forum also strongly

support the transfer of this MDL to the District of Columbia.  *First*, the District Court for the

District of Columbia has considerable expertise in the management of complex litigation,

---

Exhibit B.  The Complaint filed in *Blumenthal v. American Airlines, Inc.*, No. 1:15-cv-01056-
CKK (D.D.C., filed Jul. 6, 2015), is attached as Exhibit A, and copies of the dockets and
complaints in each of the Related Actions are attached as Exhibits C-X.

[2]  As of this filing, *Panzino v. Am. Airlines, Inc.*, No. 1:15-cv-1084 (D.D.C.), which was
filed on July 10, 2015, had not been assigned to a judge.

including antitrust class actions, and Judge Kollar-Kotelly is a seasoned and accomplished jurist with far-reaching experience and expertise managing complex class actions generally, important antitrust actions and actions involving the airline industry.  Critically, Judge Kollar-Kotelly presided over DOJ's 2013 challenge to the American-US Airways merger.  *United States v. US Airways Grp.*, *Inc.*, No. 1:13-cv-01236 (D.D.C.).  In addition, Judge Kollar-Kotelly presided over the landmark Microsoft antitrust litigation following remand from the District of Columbia Court of Appeals.  *United States v. Microsoft Corp.*, 231 F. Supp. 2d 144 (D.D.C. 2002), *aff'd sub nom.*, *Massachusetts v. Microsoft Corp.*, 373 F.3d 1199 (D.C. Cir. 2004).  Judge Kollar-Kotelly is thus particularly well-suited to manage this complex airlines antitrust MDL because she is well familiar with the industry and the legal doctrines underlying Plaintiffs' claims.

*Second*, when compared to the Northern District of California, Northern District of Illinois, Eastern District of New York, Southern District of New York and Eastern District of Pennsylvania, the District of Columbia has the lowest volume of MDLs currently before it: only five MDLs (the same number of MDLs that are pending in the Northern District of Texas), none of which is assigned to Judge Kollar-Kotelly.  The District Court for the District of Columbia also has the lowest volume of filings per judge of any of the districts in which Related Actions have been filed.  *Finally*, the District of Columbia is a large city that is easily accessible to all parties and offers all the amenities and resources necessary to accommodate the parties, their counsel and witnesses throughout pretrial proceedings.

For these reasons, and those that follow, Blumenthal respectfully requests that the Panel order all Related Actions be transferred to the District Court for the District of Columbia and coordinated or consolidated before Judge Kollar-Kotelly for pretrial proceedings.

### FACTUAL BACKGROUND

In early-July 2015, the media reported that DOJ's Antitrust Division had begun an investigation into potential collusion among American, Delta, Southwest and United, and had served each airline with a civil investigative demand ("CID"). Following the revelation of this investigation, which we understand is being run by the Antitrust Transportation, Energy, and Agriculture Section of the DOJ Antitrust Division in Washington, D.C., plaintiffs across the country filed civil antitrust class actions against the four airlines in seven districts, including, as of the time of this filing, the District of Columbia, Northern District of California, Northern District of Illinois, Eastern District of New York, Southern District of New York, Eastern District of Pennsylvania and Northern District of Texas. As of the time of this filing, five cases have been filed in the District of Columbia by six Plaintiffs. *See* Exhibit B, Schedule of Actions. The Plaintiffs in the Related Actions all allege a conspiracy by the Defendant airlines to fix, raise, maintain, or stabilize the price of domestic airline tickets in violation of Section 1 of the Sherman Act.

### ARGUMENT

I.     **Transfer and Consolidation of the Airlines Antitrust Cases is Appropriate and Necessary**

Blumenthal believes that all Related Actions should be consolidated in a single judicial forum because each concerns common predominant questions of law and fact. *See In re Union Pac. R.R. Co. Emp. Practices Litig.*, 314 F. Supp. 2d 1383, 1384 (J.P.M.L. 2004); *In re: Southeastern Milk Antitrust Litig.*, 530 F. Supp. 2d 1359, 1360 (J.PM.L. 2008). Specifically, each Plaintiff alleges that the Defendant airlines conspired to keep flight capacity low in order to maintain high airfares across the board and each Plaintiff has brought their respective case pursuant to Section 1 of the Sherman Act. Consequently, prosecution of the Related Actions will

involve many of the same documents and witnesses.  Consolidation is thus appropriate as it will

"promote the just and efficient conduct of this litigation."  *In re Union Pac. R.R. Co. Emp.*

*Practices Litig.*, 314 F. Supp. 2d at 1384; *accord In re Hawaiian Hotel Room Rate Antitrust*

*Litig.*, 438 F. Supp. 935, 936 (J.P.M.L. 1977) ("[T]he private actions raise common questions of

fact concerning the existence, scope and effect of the alleged conspiracy, and therefore transfer is

necessary in order to prevent duplication of discovery, eliminate the possibility of inconsistent

pretrial rulings, and streamline the rest of the pretrial proceedings as well.").

As set forth below, Blumenthal respectfully submits that the District of Columbia is the

most appropriate transferee forum for several reasons.

## II.     The District Court for the District of Columbia is the Most Appropriate Transferee Forum

Factors frequently considered by the MDL Panel when selecting the proper venue for

transfer and consolidation or coordination include:  (1) the pendency of a government

investigation; (2) the respective caseloads of the proposed transferee district courts; (3) the

familiarity and expertise of the transferee district of with the underlying issues present in the

litigation; and (4) the accessibility of the proposed transferee district to parties and witnesses.

*See, e.g.*, *In re Polyurethane Foam Antitrust Litig.*, 753 F. Supp. 2d 1376, 1378 (J.P.M.L. 2010);

*In re Aggrenox Antitrust Litig.*, 11 F. Supp. 3d 1342, 1343 (J.P.M.L. 2014); *In re SIGG*

*Switzerland (USA), Inc., Alum. Bottles Marketing and Sales Practices Litig.*, 682 F. Supp. 2d

1347, 1349 (J.P.M.L. 2010); *In re Gator Corp. Software Trademark & Copyright Litig.*, 259 F.

Supp. 2d 1378, 1380 (J.P.M.L. 2003); *In re Pre-filled Propane Tank Antitrust Litig.*, 53 F. Supp.

3d 1383, 1384 (J.P.M.L. 2014).  Each of these factors militates strongly in favor of transferring

the Related Actions to the United States District Court for the District of Columbia over any of

the other districts where Related Actions have been filed.

A.     **The Pendency of DOJ's Investigation in the District of Columbia Strongly Favors It as the Transferee Forum**

As noted above, DOJ's Transportation, Energy, and Agriculture Section in Washington, D.C. has sent a CID to each of the Defendant airlines regarding "possible unlawful coordination" among them—a fact that each of the Defendant airlines has confirmed publicly.  This Panel frequently has found that the location of a pending government investigation is an important factor in selecting a transferee court.  *See, e.g.*, *In re Polyurethane Foam Antitrust Litig.*, 753 F. Supp. 2d at 1378 (finding the presence of grand jury proceedings and government investigation in the district provided efficiencies in the pretrial proceedings of the private lawsuits); *In re: Foundry Resins Antitrust Litig.*, 342 F. Supp. 2d 1346, 1347 (J.P.M.L. 2004) ("The presence of government investigation and federal grand jury in" a district "tilts toward centralization in" that district); *In re Amino Acid Lysine Antitrust Litig.*, 910 F. Supp. 696, 698 (J.P.M.L. 1995) (selecting appropriate transferee forum based on, *inter alia*, the site of the government investigation); *In re Hawaiian Hotel Room Rate Antitrust Litig.*, 438 F. Supp. at 936 (finding that the fact that the grand jury convened in the District of Hawaii was "an important factor favoring th[at] District"); *In re Refrigerant Gas Antitrust Litig.*, 334 F. Supp. 996, 997 (J.P.M.L. 1971) (despite the fact that the government's criminal action had been stayed shortly after filing and no discovery had commenced, subsequent private class actions were transferred to district in which grand jury action was proceeding); *In re Ampicillin Antitrust Litig.*, 315 F. Supp. 317, 319 (J.P.M.L. 1970) (when selecting a transferee district, "[p]erhaps the most important factor is the pendency of the Government action."); *see also In re Multidistrict Private Civ. Treble Damage Antitrust Litig.*, 311 F. Supp. 1349, 1351 (J.P.M.L. 1970) (holding that the Central District of California was the appropriate transferee forum because it was where the United States brought

its antitrust enforcement action and where grand jury documents that plaintiffs sought to use were impounded and was thus the "center of gravity" of the litigation).

The Panel's decision in *In re Hawaiian Hotel* aptly demonstrates the often dispositive nature of this factor.  In *Hawaiian Hotel*, the Panel transferred to and consolidated related class actions in the District of Hawaii, because, notwithstanding the general inconvenience of that forum, it was where the government had brought suit and therefore could "best facilitate the coordination of the private actions with the seminal Government civil action that [wa]s still pending there."  438 F. Supp. at 936; *see also In re South Central States Bakery Prods. Antitrust Litig.*, 433 F. Supp. 1127, 1130 (J.P.M.L. 1977); *In re Griseofulvin Antitrust Litigation*, 395 F. Supp. 1402, 1403 (J.P.M.L. 1975).

The Panel's reasoning in *Hawaiian Hotel* and the other above-cited consolidation decisions is eminently sensible and applies with equal force in this MDL.  Indeed, where, as here, a government investigation is proceeding simultaneously with private civil litigation, careful coordination between the government and private claims is often necessary.  *See Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211 (1979).  As the Panel has found on several occasions, such coordination is more readily accomplished in the district in which the government investigation is proceeding.  *See, e.g.*, *In re Cuisinart Food Processor Antitrust Litig.*, 506 F. Supp. 651, 655 (J.P.M.L. 1981) (transferring private class actions to the same district as the pending grand jury investigation where documents relied upon by grand jury were located); *In re Cal. Armored Car Antitrust Litig.*, 476 F. Supp. 452, 454 (J.P.M.L. 1979); *In re Fine Paper Antitrust Litig.*, 446 F. Supp. 759, 761 (J.P.M.L. 1978) (deciding factor in picking transferee forum was presence of many documents subpoenaed by grand jury, which would best facilitate any necessary coordination between private actions and government proceedings).

As such, and in light of the ongoing DOJ investigation into the Defendant airlines' alleged collusive behavior, which is centered in Washington, D.C., Blumenthal respectfully submits that the Related Actions should be transferred to the District Court for the District of Columbia.

**B.     The Honorable Colleen Kollar-Kotelly Has Significant Experience Presiding Over Complex Class Actions and Antitrust Cases**

The availability of an experienced and capable judge familiar with the litigation is another important factor in selecting a transferee forum. *In re Ampicillin Antitrust Litig.*, 315 F. Supp. at 319. Judge Kollar-Kotelly's extensive experience presiding over complex antitrust cases and class actions makes her an ideal judge to oversee this MDL. Just recently, Judge Kollar-Kotelly presided over a Clayton Act challenge brought by DOJ and several state attorneys general in 2013 to the American Airlines-US Airways merger. *United States v. US Airways Grp., Inc.*, 38 F. Supp. 3d 69 (D.D.C. 2014). DOJ and the states opposed the merger on several grounds including, significantly for present purposes, the likelihood that "result in the creation of the world's largest airline, would substantially lessen competition for commercial air travel in local markets throughout the United States and result in passengers paying higher airfares and receiving less service."[3] The lawsuit indeed sought "to prevent the [airlines] from merging and to preserve the existing head-to-head competition between the[m] that the transaction would eliminate."[4] The litigation thus concerned issues that overlap with those at issue in this MDL: namely, the importance of preserving adequate competition in the airline industry to ensure a competitive pricing environment for airfares. Having presided over the American-US Air

---

[3] U.S. Department of Justice, Office of Public Affairs, Press Release, *Justice Department Files Antitrust Lawsuit Challenging Proposed Merger Between US Airways and American Airlines* (Aug. 13, 2013), http://www.justice.gov/opa/pr/justice-department-files-antitrust-lawsuit-challenging-proposed-merger-between-us-airways-and (last visited July 9, 2015).

[4] *Id.*

merger litigation, Judge Kollar-Kotelly has vast knowledge of the airline industry and, in particular, issues relating to flight capacity and airline ticket pricing that are likely to feature prominently in this MDL.

In addition, in 2001, Judge Kollar-Kotelly was assigned to decide the penalty against Microsoft for its monopolization of the personal computer operating system market in what is arguably one of the most significant antitrust cases ever decided.  Judge Kollar-Kotelly's thorough, well-reasoned decision, which was affirmed by the D.C. Circuit, demonstrates her expertise in antitrust law.  *See United States v. Microsoft Corp.*, 231 F. Supp. 2d 144 (D.D.C. 2002), *aff'd sub nom., Massachusetts v. Microsoft Corp.*, 373 F.3d 1199 (D.C. Cir. 2004).

*Finally*, Judge Kollar-Kotelly has presided over several dozen complex class actions, including, in addition to *Microsoft*, multiple class actions alleging violations of federal antitrust laws.  *See, e.g.*, *Cohen v. Chilcott*, 522 F. Supp. 2d 105 (D.D.C. 2007) (consumer class action alleging that pharmaceutical companies engaged in unlawful conspiracy to restrain trade in violation of Sherman Act); *Meijer, Inc. v. Warner Chilcott Holdings Co. III*, *Ltd*., 246 F.R.D. 293 (D.D.C. 2007) (antitrust class action alleging that drug manufacturers entered into agreement to delay market availability of generic version of oral contraceptive drug, causing wholesalers to overpay during period of delay, in violation of Sherman and Clayton Acts);  *Vista Healthplan, Inc. v. Warner Holdings Co. III*, 246 F.R.D. 349 (D.D.C. 2007) (putative class action by providers of medical care benefits against manufacturers of hormonal contraceptives alleging unlawful conspiracy to prevent a generic version of name-brand drug from reaching the market); *Diamond Chem. Co., Inc. v. Akzo Nobel Chems. B.V.*, 517 F. Supp. 2d 212 (D.D.C. 2007) (class action by purchasers of certain chemicals alleging that defendants conspired to fix, raise, maintain, or stabilize the prices and allocate markets in violation of the Sherman Act).

Judge Kollar-Kotelly thus has an unparalleled breadth and depth of experience germane

to this litigation and is well-prepared to manage this MDL.

### C.     The District of Columbia Has Few MDLs Pending Before It Compared to the Majority of the Districts in the Related Actions and a Lighter Caseload Per Judge

In selecting the most appropriate transferee forum for multidistrict litigation, the Panel

also considers the number of MDLs currently pending in a potential transferee district.  *See In re*

*Gator Corp. Software Trademark & Copyright Litig.*, 259 F. Supp. 2d 1378, 1380 (J.P.M.L.

2003) (transferring to a forum that "is not currently overtaxed with other multidistrict dockets").

The District of Columbia, which, like the Northern District of Texas, has only 5 MDLs currently

pending before it, is one of the two least MDL-heavy Districts at this time.[5]  And none of the 5

MDLs currently pending before the D.D.C. is before Judge Kollar-Kotelly.  In comparison, the

Eastern District of New York currently is presiding over 9 MDLs; the Southern District of New

York is presiding over 35 MDLs; the Northern District of California is presiding over 19 MDLs;

the Northern District of Illinois is presiding over 18 MDLs; and the Eastern District of

Pennsylvania is presiding over 17 MDLs.[6]

In addition to a relatively light MDL docket, the District Court for the District of

Columbia also currently has the lowest number of actions filed per judgeship, making it a

favorable transferee forum.  *See In re Petroleum Prods. Antitrust Litig.*, 419 F. Supp. 712, 719

(J.P.M.L. 1976).  As of March 31, 2015, only 170 total actions were filed per judgeship in the

D.D.C. compared to 682 in the Northern District of Texas; 481 in the Northern District of

---

[5]  Judicial Panel on Multidistrict Litigation, MDL Statistics Report – Distribution of Pending MDL Dockets by District (June 15, 2015), http://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-June-15-2015.pdf ("MDL Statistics Report") (last visited July 8, 2015).

[6]  *See id.*

California; 570 in the Northern District of Illinois; 485 in the Southern District of New York;

570 in the Eastern District of New York; and 488 in the Eastern District of Pennsylvania.[7]

> **D.    The District Court for the District of Columbia Has Extensive Relevant Experience and Expertise**

The District Court for the District of Columbia has considerable expertise handling the

myriad issues presented by complex, multidistrict litigation, in general, and antitrust class

actions, specifically.  *See, e.*g., *In re Rail Freight Fuel Surcharge Antitrust Litig.*, MDL No.

1869., No. 1:07-mc-00489-PLF-GMH (D.D.C); *In re Papst Licensing GMBH & Co. KG Litig.*,

MDL No. 1880, Misc. No. 07-00493 (RMC) (D.D.C.) ; *In re Fed. Nat'l Mortgage Assoc.*

*Securities, Derivative & ERISA Litig.*, MDL No. 1668, No. 04-1639 (RJL) (D.D.C.); *In re*

*Endangered Species Act Section 4 Deadline Litig.*, MDL No. 2165, No. 1:10-mc-00377-EGS

(D.D.C.*); In re Health Mgmt. Assocs., Inc. Qui Tam Litig., (No. II)*, No. 1:14-mc-00339-RBW

(D.D.C.).  The District is, therefore, ideally-suited to oversee this complicated MDL from a

procedural perspective.

The District Court for the District of Columbia also has served as the main forum for

numerous complex actions involving the airlines industry.  *See, e.g*., *Dominguez v. UAL Corp.*,

No. CIV. 07-0418 RJL, 2010 WL 8753290 (D.D.C. Sept. 29, 2010) (antitrust lawsuit challenging

United's prohibition on ticket resale or transfer), *vacated*, 666 F.3d 1359 (D.C. Cir. 2012);

*United States v. Korean Air Lines Co*., No. CR. 07-0184, 2007 WL 7610115 (D.D.C. Aug. 1,

2007) (alleging price fixing of rates for international air cargo); *United States v. Am. Airlines,*

*Inc.*, No. CIV.A. 92-2854, 2004 WL 3176547 (D.D.C. Sept. 23, 2004) (settlement agreement

---

[7]  United States Courts, Statistics & Reports, U.S. District Courts–Combined Civil and Criminal Federal Court Management Statistics (March 31, 2015), http://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2015/03/31-2 (last visited July 8, 2015).

enjoining American from using travel dates to initiate or match a fair increase and from using travel dates in initiating or extending a cross market initiative); *Atl. Coast Airlines Holdings, Inc. v. Mesa Air Grp., Inc.*, 295 F. Supp. 2d 75, 78 (D.D.C. 2003) (alleging antitrust violations by regional airline) dismissed, No. 04-7011, 2004 WL 1249736 (D.C. Cir. June 7, 2004); *Nader v. Air Transp. Ass'n of Am.*, 426 F. Supp. 1035 (D.D.C. 1977) (alleging anticompetitive agreement in respect to the practice of overbooking flights).  Of particular note, the District of Columbia was the forum for litigation filed by the United States to stop several airlines from using the Airline Tariff Publishing Company as a signaling device to facilitate agreements on airline ticket fares and supervised the consent decree that resulted from that litigation.  *United States v. Airline Tariff Pub. Co.*, No. 92-2854(SSH), 1994 WL 502091, at *3 (D.D.C. Aug. 10, 1994).  The District thus has ample subject-matter expertise to decide the issues presented by this MDL.

In sum, the District Court for the District of Columbia's demonstrated experience managing complex MDLs and class actions as well as its expertise with cases involving the airline industry make it the ideal forum for this MDL.

**E.     The District of Columbia is a Convenient Forum for All Parties, their Counsel and Witnesses**

The Panel frequently selects a proposed transferee forum based on a consideration of the ease with which the parties and potential witnesses will be able to litigate in that jurisdiction. *See In re Trasylol Prods. Dab. Litig.*, 545 F. Supp. 2d 1357, 1358 (J.P.M.L. 2008) (selecting transferee district based, in part, on its "accessible metropolitan location"); *In re Mirapex Prods. Dab. Litig.*, 493 F. Supp. 2d 1377 (J.P.M.L. 2007) (choosing transferee forum, in part, because it was "easily accessible").  Moreover, where, as here, the constituent actions are geographically dispersed and no one district "stands out as the focal point for th[e] nationwide docket," the

Panel finds persuasive the "relative convenien[ce]" of the transferee forum to all parties.  *E.g.*, *In re Wireless Telephone 911 Calls Litig.*, 259 F. Supp. 2d 1372, 1374 (J.P.M.L. 2003).

Because the alleged collusive activity at issue occurred across the United States and the Plaintiffs and Defendant airlines are dispersed throughout the country—setting aside the fact that DOJ's investigation is being run out of Washington, D.C., which in essence makes D.C. "the center of gravity for the litigation[,]" *In re Multidistrict Private Civ. Treble Damage Antitrust Litig.*, 311 F. Supp. at 1351—there is no one district that otherwise stands out as the "focal point."  The District Court for the District of Columbia is a highly convenient forum for this MDL for all parties, as it sits within a major metropolitan area in close proximity to three international airports (Reagan National Airport, Dulles International Airport and Baltimore/Washington International Thurgood Marshall Airport), and has countless hotels and other business and legal resources.  The District of Columbia is thus an appropriate transferee forum.  *See In re Ins. Brokerage Antitrust Litig.*, 360 F. Supp. 2d 1371, 1373 (J.P.M.L. 2005) (holding that District of New Jersey was an appropriate forum because it "offers an accessible metropolitan location…geographically convenient for...litigants and counsel; and [ ] the district is equipped with the resources that this complex [ ] docket is likely to require."); *see also In re Worldcom, Inc. Securities & "ERISA" Litig.*, 226 F. Supp. 2d 1352, 1355 (J.P.M.L. 2002); *In re Jamster Mktg. Litig.*, 427 F. Supp. 2d 1366, 1368 (J.P.M.L. 2006).

Moreover, the Defendant airlines—each of which offers several flights each day in and out of Washington, D.C.'s three airports—conduct substantial business in and around the District of Columbia and undeniably have a presence there.  *See In re: Southeastern Milk Antitrust Litig.*, 530 F. Supp. 2d at 1360 (finding that the Eastern District of Tennessee was an appropriate transferee forum because, among other things, two of the defendants had a presence there); *see*

14

*also In re Novartis Wage and Hour Litig.*, 460 F. Supp. 2d 1382, 1383 (J.P.M.L. 2006) (finding

that a transferee forum is appropriate if all defendants have a presence in the district).  Further, as

previously discussed, the Defendant airlines will have substantial contact with the District of

Columbia as this litigation proceeds given that the DOJ investigation is being run out of the

Antitrust Division in Washington, D.C.

## CONCLUSION

For the foregoing reasons, Plaintiff Elliot J. Blumenthal respectfully requests that the

Panel order that the Related Actions be transferred to the United States District Court for the

District of Columbia and coordinated or consolidated for pretrial proceedings before the

Honorable Colleen Kollar-Kotelly.

Dated: July 10, 2015

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

/s/ *Stephen R. Neuwirth*
Stephen R. Neuwirth
Adam B. Wolfson
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone:  (212) 849-7000

Jon Corey
777 6th Street, NW, 11th Floor
Washington, DC  20001
Telephone: (202) 538-8000

**BERNSTEIN LIEBHARD LLP**

Ronald J. Aranoff
Dana S. Smith
Tania T. Taveras
10 East 40th Street
New York, NY 10016
Telephone: (212) 779-1414

**COHEN MILSTEIN SELLERS & TOLL, PLLC**

Kit A. Pierson
Daniel A. Small
Daniel H. Silverman
1100 New York Ave., NW
Suite 500 West
Washington, DC 20005
Telephone:  (202) 408-4600

Theodore J. Leopold (DC Bar No. FL705608)
2925 PGA Boulevard, Suite 200
Palm Beach Gardens, FL 33410
Telephone:  (877) 515-7955

*Attorneys for Plaintiff Elliot J. Blumenthal and the Class*